# AFFIDAVIT

**State of Kansas**     )
                        )     ss:
**County of Pawnee**    )

   I, Aaron Cobb, Corrections Supervisor I, at the Larned State Correctional Facility (LSCF), being duly sworn according to law upon my oath, do hereby certify and affirm that I have personal knowledge of the following to be true:

1. My name is Aaron Cobb and I am a Corrections Supervisor I at Larned State Correctional Facility (LSCF), located in Larned, Kansas. I have been employed by the State of Kansas Department of Corrections since July of 2004.
2. I understand that plaintiff inmate Ryan Cheatham has named me in his lawsuit regarding a use of force on July 4, 2025.
3. I was assigned to the team assembled to remove Mr. Cheatham from the segregation exercise area and move him to the segregation living unit. I was not part of the team who actually suited up to conduct the use of force. My role was to observe the use of force and prepare the use of force report number 2026-08-0001.
4. I was earlier involved with negotiations with Mr. Cheatham to submit to restraints and return to his living unit. I spoke with him from 8:32 a.m. to 8:50 a.m.
5. After my negotiations failed, I went about other business until I was called to be a part of the team that was to remove Mr. Cheatham from the segregation exercise area.
6. My role was to document the various aspects of the use of force, to direct the use of force as necessary, to communicate with Mr. Cheatham throughout the use of force and beyond and to create the report with all the time frames, people involved and other comments which I handwrote in the appropriate heading boxes and on the back of page 2 of the attachment.
7. I did not have a physical role in the use of force. I did issue a variety of instructions and directives as well as communicate with Mr. Cheatham during the morning of July 4, 2025.
8. When the team assembled to restrain Mr. Cheatham entered the segregation yard area after COI Converse declared negotiations had failed, I asked Mr. Cheatham again if he would comply with the request to "cuff up". Once a resident sees that the team has been assembled and is present and ready to restrain him by force, they will sometimes comply. Mr. Cheatham did not do so.
9. Then I directed the two members of the team with pepper ball guns to deploy the

EXHIBIT 8

chemical agents. I did so again after waiting a couple of minutes after the first deployment to let the chemical agents called PAVA powder to take effect. I instructed the second use and again after Mr. Cheatham started to cooperate, but then walked away from the door at which he would be handcuffed. I directed CSI Hopkins to remain on target with the pepper balls after Mr. Cheatham pretended that he was going to cooperate and then did not. I periodically did encourage Mr. Cheatham to allow himself to be restrained and did direct the stoppage of the use of pepper balls when Mr. Cheatham did present himself at the door to be handcuffed.

10. After Mr. Cheatham was restrained I remained involved to escort him to the decontamination shower, directed the team to cut off Mr. Cheatham's shirt. It could not be removed while he had his handcuffs on and I wasn't going to order they be removed until the shower door was locked. We did take off his leg restraints and remove his pants and underwear.

11. I did take three photos of Mr. Cheatham's body after he was showered. CSII Angie Lines took the video of the use of force on Mr. Cheatham. The other three pictures of him were taken at later intervals while he was on crisis level, as required by policy.

12. Any actions I took or did not take regarding plaintiff Cheatham were performed within the scope of the duties of my position of employment with the State of Kansas and not in any personal or non-business capacity.

FURTHER AFFIANT SAITH NOT!

_____
Aaron Cobb

Subscribed and sworn to before me this 26th day of January, 2026.

_____
Notary Public

NOTARY PUBLIC - State of Kansas
JENNIFER WYMAN
My Appt Expires 12/1/2027