IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT of Kansas

Ryan Cheatham
Plaintiff

v.

TIM Easley
Defendants et al

CASE NO. 25-CV-03241-HLT-GEB.

FILED
U.S. District Court
District of Kansas
11/25/2026
Clerk, U.S. District Court
By: MSB Deputy Clerk

Plaintiff's Motion FOR Summary judgment And or partial summary judgment (Request oral Argument)

1. Nature of Case.

Plaintiff on July 4th 2025. Was shot in the back And back of the head and Legs by correctional officers at the Larned Correctional Facility. Plaintiff alleges the use of force was excessive and violated his eighth amendment rights using cruel and unusual punishment. Plaintiff Files an ~~Affidavit~~ Declaration in support of this motion.

STATEMENT of Concotroverted Facts

(1.) On July 4th 2025, while at the Larned Correctional Facility on the Segregation yard

# STATEMENT of Uncontroverted Facts Continued.

Plaintiff Ryan Cheatham was fired at by officer Tanner Lang and officer Hopkins a total of 67 times with pepperball projectile Chemical agents. (SEE Video, Use of Force) (SEE AFF. Lang Martinez Report) (SEE AFF. Hopkins Martinez Report)

(2.) Plaintiff Ryan Cheatham was not being Combative the entire time on video of the incident. (SEE use of Force video)

(3.) Plaintiff's Back was facing the officers Shooting the pepperball projectiles for most of incident. (SEE use of force video)

(4.) Exhibit "A" of the supplemental Martinez Report titled "Targeting" is a training policy that states a officer is recommended to fire a minimum of 3-5 projectiles (direct impact)

Followed by a tactical pause, followed by (if necessary) with an additional 3-5 projectitles (direct impact) If the desired change in behavior is not acheived, Consider alternative options. (SEE Exhibit "A" Attachment and of supplemental Martinez Report)

(5.) The video footage shows officers only utilized 1. tacticle pause in between volley of pepperballs. (SEE use of Force video)

(6.) Officer Hopkins fired a total of 55 times at plaintiff. (pepperball projectitles) (SEE AFF. Hopkins) Martinez Report.

(7.) There is No set number How many pepperballs made contact with plaintiff. (SEE use of force video)

(8.) Plaintiff Exhausted his Administrative Remedys by following the inmate grievance procedure. [See Attached Grievances] (Form 9, etc)

(9.) Plaintiff Request 500,000 in punitive damages Emotional and Mental damages. (Plaintiff asserts Fact cannot be disputed)

(10.) Kansas department of Corrections, cannot show a Signal cell extraction with one inmate in the cell were 2 active Shooters was utilized as in plaintiff's Situation using two officers deploying pepperball Chemical agents at one inmate. (Plaintiff asserts this fact cannot be disputed)

(11.) Plaintiff didnt have any weapons at the time of Negotiations or during the use of Force. [SEE USE of Force video]

# STATEMENT OF UNCONTROVERTED FACTS Continued.

(12.) Kansas Department of corrections / defendants have not provided any evidence or documentation for Guidence to the courts what situations would require More use of pepperballs, Nor have they provided any evidence or documentation on whether or not if the agency policy was applied to state, and local laws and whether or not Federal caselaw is the Guiding Factors. [SEE Martinez Report] Supplemental

(13.) Officer Hopkins stated in his AFFidavit that He step back and began to fire, because he didnt want plaintiff to grab His "Gun"! [SEE AFF. Hopkins]

(14.) The Segregation yard, caged fence, would Never allow a inmate to grab another officers pepperball gun inside another segregation cage due to the Construction of the Fence. [Plaintiff asserts Fact cannot be disputed]

(15.) Plaintiff Surrendered Wires located on the grand to officer cobb long before Negotiations started and Specificly told officer cobb, He wasn't tryna fight officers, and He wasn't trying to pickup more time. [Plaintiff Asserts this Fact cannot be disputed]

(16.) Plaintiff was singing a rock N roll song to patronize officers, [SEE Plaintiffs declaration]

(17.) At the time Medical ask plaintiff if he was ok, He stated he is alright, after days passed plaintiff's back began to hurt and plaintiff put in sick-calls on the issue (SEE Plaintiff's declaration)

(18.) Plaintiff Has Mental Health issues and is a level 4, point, evaluated mental health resident. who has the following Mental health diagnoses. "Bipolar Disorder, current episode manic with psychotic features. Other specified Trauma and Stressers Related disorder. And "unspecified personality Disorder. (Plaintiff asserts fact cannot be disputed)

(19.) Plaintiff has stated a claim under the Eighth Amendment, In violation of an excessive use of force and the Cruel and unusual punishment clause. (Plaintiff asserts fact cannot be disputed

(20.) officer Cobb stated in Exhibit "2" of plaintiffs Response to the Martinez Report "work to improve" amount of pepperballs used" SEE Exhibit "2" Plaintiffs response to Martinez Report.

# Table of Contents for Exhibits to consider in support of Summary judgment.

(1.) Use of Force video

(2.) First Martinez Report, All AFF.

(3.) Affidavit of officer Hopkins. (Martinez Report)

(4.) Affidavit of officer Lang. (Martinez Report)

(5.) Second supplemental Martinez Report Exhibit "A."

(6.) Plaintiff's Declaration.

(7.) Exhibit "2" of Plaintiff's Response to First martinez Report.

(8.) Grievance Receipts and form 9 recents.

# ARGuments And Authorities

## · Legal Standard ·

Summary Judgment is appropriate if the Moving party demonstrates that there is no genuine issue as to any Material Fact and the Movant is entitled to Judgment as a Matter of Law. A fact is Material when it is essential to the Claim and issues of fact are genuine if the proffered evidence permits a reasonable Jury to decide the issue in either party's favor. The Movant bears the initial burden of proof and Must show the lack of evidence on an essential element of the claim. The Non Movant Must then bring forth specific facts showing a genuine issue for trial. these facts must be clearly identified through AFFidavits, deposition transcript, or incorporated Exhibits, Conclusory allegations alone Cannot survive a Motion for summary Judgment. the Courts view all evidence and reasonable inferences in the light Most favorable to the Non-Moving party, Fed. R. Civ. P. 56 (a)

---

Plaintiff asserts No Discovery is, needed as incident on video footage, and Exhibit "A" of supplemental Martinez Report Shows, officer Hopkins was excessive with his Force, And unecessary.

## ArGuement & Authorities.

Prison officials violate inmate's Eighth Amendment rights when they subject them to the "unnecessary and wanton infliction of pain." Id. at 319". [W]henever prison officials stand accused of using excessive physical force in violation of the cruel and unusual Punishment Clause, the core judicial inquiry is... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S 1, 6-7 (1992) (Citation omitted) "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10.

Plaintiff must prove both an Objective
(7.) Component and Subjective Component to Suceed on an excessive force Claim. Smith v. Cochran, 339 F.3d 1205, 1212 10th Cir 2003.

To establish the Objective Component, Plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a Constitutional violation." Id. Not every isolated battery or injury to an inmate amounts to a federal Constitutional violation. See Hudson, 503 U.S. at 9 (stating that Not "every Malevolent touch by a prison guard gives rise to a federal cause of action.")(Citing Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973)("Not every Push or shove, even if it may later seem unnecessary in the peace of a Judge's chambers, Violates a prisoner's Constitutional rights").

To establish the Subjective Component, Plaintiff must show that Defendant "act[ed] with a Sufficiently culpable State of Mind." Cochan, 339 F.3d at 1212 (Citation omitted).

Plaintiff Can Meet Both Objective Component and the Subjective Component. See Provided

(8.) video footage of the incident. Also See Provided Affidavits by officer Hopkins (8)

and officer Tanner Lang who isnt named as a defendant in this case. officer Hopkins Shot 55 pepperball projectiles at Plaintiff and officer Tanner Lang shot 6. waited and Shot 6 more for a total of 12 times. Officers fired a total of 67 Pepperball projectites at Plaintiffs Back and Back of Plaintiffs Head and legs. Plaintiff received Multiple Bleeding woumbs and bruises! plaintiff even had extra Cloths on. ★ for the objective component Plaintiff will point to case Nelson V. City of Davis, 685 F.3d 867 282 Ed. Law Rep. 80, 12 Cal. Daily Op. Serv. 7839, 2012 Daily Journal D.A.R 9528 (9th Cir. 2012)

Timothy Nelson a former Student of the University of California at Davis (U.C. Suffered permanent injury when he was Shot in the eye by a pepperball projectile. This case Broke down the functioning of the pepperball projectile. " Pepper ball guns are, in essence, Paintball guns that fire rounds containing oleoresin Capsicum ("OC") powder, also known as pepper Spray. These rounds are fired at a Velocity of 350 to 380 feet per second

(9.)

Nelson V. City of Davis 571 F.3d 924

926 n. 1 (9th Cir 2009) with the Capacity to fire Seven rounds per Second. They break open on impact and release OC powder into the air, which has an effect Similar to Mace or pepper spray. PEPPERBALLS THEREFORE COMBINE THE KINETIC IMPACT of a Projectile with Sensory discomfort of pepper Spray.

See [685 F.3d 874], it states "When the partygoers failed to disperse, wilson ordered his team to "disperse them," at which point Barragan, Chang and Garcia shot pepperballs towards Nelson's group from a distance estimated by various parties to have been "45 to 150 feet away. A pepperball launched from one of the officers guns struck Nelson in the eye. As a result of his injury, Nelson suffered temporary blindness, and "a permanent loss of visual acuity," and endured "multiple Surgeries to repair the ocular injury he sustained."

[Objective Argument]

- Plaintiff was less than And or about 8 to 10 Feet away from the active Shooters. as Stated in the above case, these pepperball launcher Guns are fired at a Velocity of 350 to 380 Feet per Second

There is NO set number of How Many Pepperballs Hit plaintiff. He was told only 12 by officers. Plaintiff sustained open wombs To his arms, and Back and Could of been Shot in the face had he not turned His Back towards the Shooters.

[Subjective Argument]

Officer Hopkins States in his Affidavit that he Stepped back away from the cage Close to plaintiff and fired his pepperball Launcher so Plaintiff wouldnt grab his gun. Also SEE Exhibit "Z" Cobb States work to improve amount of pepperballs used.



www.PrintablePaper.net

He said He fired a Total of 55 times to make sure plaintiff was struck. He didn't shoot to Cause plaintiff pain or discomfort. Contrary to this story, Plaintiff's Back was towards the active Shooters the entire time, Plaintiff Never once became aggressive with Staff before or when the shooters deployed the pepperballs

Plaintiff didn't Have a weapon nor made any threats to Staff. Plaintiff couldn't possible grab the officers guns even if he tryed, as there was a wire caged fence that Seperated Plaintiff and the officers shooting for Example the fence looked like the Drawing Below



it would of been imposible for plaintiff to grab the officers' guns. this statement by officer Hopkins Shows a sufficiently culpable State of mind. by making a claim that plaintiff could of grabbed his gun knowing his Back was to the officers Before they started Shooting. And Claiming Plaintiff could of grabbed the gun - When it would of been impossible due to the Construction of wired Fence. This officer Had every intention to Cause Plaintiff Pain and discomfort.

To First order a physical cell extraction, to the use of pepperball projectiles Claiming Plaintiff had wires or weapon, they knew plaintiff didn't Have as He told officer Cobb He wasn't trying to catch additional time in prison and He gave those wires to Cobb long before the Shooters came, Shows this Planned use of force by those involved had a sufficiently Culpable Mind State and was "Maliciously and Sadistically to cause plaintiff Harm

www.PrintablePaper.net

Plaintiffs Misunderstood position After incident plaintiff was indeed patronizing staff, Because He knew they intended to Hurt Him and He wasn't going to show they did. plaintiff also put in sick-calls to be seen about back pains and other discomforts. However when prison officials Maliciously and Sadistically use force to cause harm,

Contemporary standards of decency always are violated [.] WHETHER or Not Significant injury is evident." Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010)(internal quotation marks and ellipsis omitted).

Whether Plaintiff Only Had Bruises and Bleeding wombs from the projectiles is irrelevant if the court finds actions to be Maliciously and Sadistically to cause Plaintiff Harm.

To satisfy the subjective Component, a Plaintiff must show that a prison official acted with a " Sufficiently culpable state of mind " Whitley v. Seiter, 475 U.S at 322.

Final Plaintiff Asserts these officer took no Measures to "TEMPER THE SEVERITY of the force applied. Nor did Warden Easley when He First ordered a physical Contact use of Force then Changed It to the use of Pepperball Guns / chemical agents. knowing Plaintiff didn't Have No weapons, officers didn't say, Let Me See Your Hands, they started saying cuff up and started shooting Plaintiff, even when plaintiff was bent over, Hopkins still fired. Plaintiff Can establish these defendants " Wantoness" See Hudson v. McMillian 503 U.S 1 7 (1992)

www.PrintablePaper.net

Conclusion - Plaintiff Respectfully Request this court to consider granting Summary judgment in favor of plaintiff as Plaintiff has presented No Genuine dispute exsist as to Material Fact that requires going to trial.

Respectfully
Submitted

# Targeting

- Verbalize commands and warnings.
- Consider area saturation first by impacting surrounding objects like walls, ground, automobile, and trees.
- Anticipate suspect lowering head.
- Justify each deployment of projectiles.
- PepperBall® recommends a minimum of 3-5 projectiles (direct impact), followed by a tactical pause, followed (if necessary) with an additional 3-5 projectiles (direct impact). If the desired change in behavior is not achieved, consider alternative options.
- PepperBall recognizes that there may be situations that will require fewer or more projectiles than the recommendation indicated above. These situations must be evaluated by the officer ~~and then applied~~ with agency policy, state and local laws, and federal case law as the guiding factors.






PepperBall® | All Rights Reserved. 

Exhibit A

# Plaintiff's Declaration

Comes now Plaintiff Ryan Cheatham being duly sworn and states under the penalty of perjury the foregoing being true and correct.

(1.) I'am the Plaintiff in this on going matter and have personal knowledge of the events and can testify as to what has taken place at the Larned Correctional Facility. involving a "USE of FORCE on July 4th 2025".

(2.) At 7:40 Am, during the Segregation Yard time plaintiff surrendered fenced wires located on the ground to officer cobb.

(3.) Plaintiff stated I'am Not trying to fight officer and I'am not trying to Catch more time. to officer Cobb.

(4.) After the use of Force incident, I stated I was ok"/ good to nurse williams because I didn't want officers to know I was hurting. days later I did in fact Put in sick-calls to be seen for back pa

(5.) I have Mental Health issues. I am a level "4" Mental Health resident, who was informed by my BHP, At the eldorado correctional Facility that I have current diagnoses. of "Bipolar Disorder" current episode Manic with psychotic features. Other specified Trauma and stressors Related Disorders. unspecified Personality Disorders.

(6.) Plaintiff never threaten to hurt staff.

(7.) I was not being Combative during the time of the use of Force.

(8.) I was singing and yelling to patronize officers. I didn't want them to know I was Hurting.

Respectfully
Submitted

[signature]

Informal Resolution on PF CS: use of force (excessive)

6

INMATE REQUEST TO STAFF MEMBER

To: Grahm

(Name and Title of Officer or Department)

Date: 7-12-25

CO Yawley

Unit Team, Detail, or Cellhouse Officer's Signature

**To be retained by inmate**

Level 2 grievance on use of force Larned July 4, 2025.

Tear off and give to inmate when submitted to Unit Team through receiving staff.

Inmate Name Ryan Cheeks

Receiving Staff Signature Co1 Allen

Number 16193

Date 7-15-25

**Effective Date (3-18-96) P-157**

level 3 grievance was sent via mail to Secretary of Corrections. (use of force July 4, 2025 Larned.

INMATE REQUEST TO STAFF MEMBER

To: Secretary of Corrections

(Name and Title of Officer or Department)

Date: 7-29-25

COF [illegible]

Unit Team, Detail, or Cellhouse Officer's Signature

**To be retained by inmate**

Exhibit: Grievances